George T. DAGGETT,

v.

Irwin I. KIMMELMAN, Attorney General of the State of New Jersey, Jane Burgio, Secretary of State of the State of New Jersey, Carmen A. Orechio, President of the Senate, Alan J. Karcher, Speaker of the General Assembly of the State of New Jersey.

Edwin B. FORSYTHE, Matthew J. Rinaldo, Millicent Fenwick, Harold C. Hollenbeck, James A. Courter, Margaret S. Roukema, Christopher H. Smith, Thomas Dunn, Livio Mancino, Rev. Millard D. Birt, Rafael Fajardo, Margaret Dougherty, Maretta N. Jackson and C. Joseph Lillo

v.

Thomas H. KEAN, as Governor of the State of New Jersey, Irwin I. Kimmelman, as Attorney General of the State of New Jersey, and Jane Burgio, as Secretary of the State of New Jersey.

James J. Florio, William J. Hughes, James J. Howard, Robert A. Roe, Peter W. Rodino, Jr., Joseph G. Minish, Frank J. Guarini, Bernard J. Dwyer, Carmine A. Orechio, President of the New Jersey Senate and Alan J. Karcher, Speaker of the New Jersey Assembly, Intervenors.

Edward T. Magee, Robert Morris, Matthew Grubelich, Robert M. Duphinay, Charlotte Braz, William Parkins and Kathy A. Greene, Intervenors.

Appeal of NEW JERSEY STATE SENATE, Appellant in No. 88-5230.

Appeal of GENERAL ASSEMBLY OF NEW JERSEY, Appellant in No. 88-5231.

Nos. 88-5230, 88-5231.

United States Court of Appeals, Third Circuit.

Argued Aug. 30, 1988.

Decided Jan. 10, 1989.

Leon J. Sokol (argued), Greenstone, Sokol, Behot & Fiorenzo, Hackensack, N.J. (Frank A. Campana, on the brief), for appellant/defendant-intervenor, the New Jersey State Senate.

William F. Dowd, Dowd & Reilly, Red Bank, N.J., for appellant/defendant-intervenor, the General Assembly of New Jersey.

Bernard Hellring (argued), Hellring Lindeman Goldstein Siegal Stern & Greenberg, Newark, N.J. (Jonathan L. Goldstein, Stephen L. Dreyfuss, of counsel), for appellees, Edwin B. Forsythe, Matthew J. Rinaldo, Millicent Fenwick, Harold C. Hollenbeck, James A. Courter, Margaret S. Roukema, Christopher H. Smith, Thomas Dunn, Livio Mancino, Rev. Millard D. Birt, Rafael Fajardo, Margaret Dougherty, Maretta N. Jackson and C. Joseph Lillo.

Before SLOVITER, GREENBERG and COWEN, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is another, and unfortunately not the final, episode of a litigation saga that began in 1982 with the institution of a suit to challenge the New Jersey congressional reapportionment law passed that year. In this second appeal from the award of attorneys' fees to the prevailing plaintiffs we must resolve the parties' diametrically opposing interpretations of our earlier instructions on the compensability of attorney time spent in developing the remedial reapportionment proposal ultimately adopted. We need review the earlier phases of this case only briefly.

I.

Following the 1980 census results which required New Jersey to reduce its federal congressional districts from 15 to 14, the New Jersey Legislature, which was controlled by the Democrats, enacted a congressional redistricting plan which was challenged by seven Republican members of Congress and seven residents of their districts (referred to throughout as "Plaintiffs") on the ground that the deviation range among the districts violated art. 1, § 2 of the United States Constitution. The suit named New Jersey's Governor, Attorney General, and Secretary of State as defendants. The New Jersey Senate and General Assembly, the incumbent New Jersey Democratic members of Congress, and

other concerned citizens (hereafter referred to collectively as the "Legislature") intervened as defendants and maintained the defense of the suit.

A three-judge district court held that the population deviation in the plan was not unavoidable despite a good-faith effort to achieve absolute equality, declared the plan to be unconstitutional under the standard enunciated in *Kirkpatrick v. Preisler,* 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969), and enjoined the defendants from conducting elections under it. *Daggett v. Kimmelman,* 535 F.Supp. 978 (D.N.J. 1982). The United States Supreme Court affirmed, holding that the district court had correctly applied the *Kirkpatrick* test to find that the plan was not a good-faith effort to achieve population equality. *Karcher v. Daggett,* 462 U.S. 725, 744, 103 S.Ct. 2653, 2665–66, 77 L.Ed.2d 133 (1983).

After the New Jersey Legislature failed to meet a court-imposed deadline of February 1984 for enactment of another redistricting plan, the three-judge district court held a hearing to consider reapportionment proposals. The court chose the reapportionment plan submitted by Plaintiffs on the grounds that this plan achieved the lowest population deviation and the most compact districts of any plan submitted. *Daggett v. Kimmelman,* 580 F.Supp. 1259, 1264 (D.N.J.1984). The Legislature again appealed to the Supreme Court which affirmed the district court's judgment, *Karcher v. Daggett,* 467 U.S. 1222, 104 S.Ct. 2672, 81 L.Ed.2d 869 (1984) (mem.).

As prevailing parties, Plaintiffs requested attorneys' fees under 42 U.S.C. § 1988 in the amount of $577,787. The district court awarded Plaintiffs $253,461, after reducing the lodestar by 10% to reflect unnecessary duplication in the hours billed by Plaintiffs' attorneys and by an additional 20% to reflect use of partners only to staff all aspects of the case, and after reducing the lead partner's hourly rate from $300 to $250. *Daggett v. Kimmelman,* 617 F.Supp. 1269 (D.N.J.1985).

On appeal, this court upheld the district court's fee determination for the merits phase of the litigation except for its 20% reduction for staffing the case with partners only. As to that reduction, we held that, given the "great constitutional import" of the case, the firm's staffing decisions seemed "more wise than top-heavy." *Daggett v. Kimmelman,* 811 F.2d 793, 798–99 (3d Cir.1987). We remanded the case to the district court for further development of the record on the attorneys' fees allowable for the remedy phase of the proceedings [1] for which Plaintiffs listed 773 hours of attorney time, 298 of which had been spent in conferences with clients and other members of Congress from New Jersey.

The dispute between the parties stems from the parties' opposing views of what was required on remand. The Legislature argues that Plaintiffs were obliged to prove the amount of time spent obtaining mathematical exactitude for the districting ultimately adopted; because Plaintiffs' counsel spent at most several days on such mathematical exactitude, they are limited to reimbursement in that amount. Plaintiffs, the successful Republican members of Congress and their constituents, argue that they were to exclude *only* those hours devoted "solely" to obtaining the most favorable political result; because they filed affidavits stating there was no such time, they were entitled to recovery for the hours originally listed. The district court agreed with Plaintiffs' interpretation, and awarded Plaintiffs $146,449 in fees, which figure reflected a 10% deduction for duplicative hours and a reduction in the billing rate of Plaintiffs' lead attorney as previously approved by this court. In making its award, the court adopted Plaintiffs' position that they should be permitted to recover fees for all attorney time spent on the remedy phase of the case as long as the time was not spent "solely" on political matters.

## II.

The starting point in resolving this dispute over the interpretation of this court's

1. We defined this as beginning with the Supreme Court's holding that the enacted plan was unconstitutional and continuing until the district court accepted the Plaintiffs' redistricting proposal. 811 F.2d at 800 n. 8.

remand instructions must be the language used, fairly viewed in the context of the decision. After ruling on the fees relating to the merits phase, we discussed the fees for the remedy phase. We rejected the Legislature's contention that Plaintiffs are not entitled to any compensation for the remedy phase, noting that "[i]f the appellees had submitted a reapportionment plan that had been adopted by the district court, their argument might be plausible, for under such circumstances the appellants would not be the 'prevailing party' on the remedy issue." 811 F.2d at 800. Because the Legislature's plan was rejected by the district court, and the Plaintiffs' plan was accepted, the Plaintiffs did prevail. We held, therefore, that we would not as a matter of law preclude recovery for the remedy phase of the proceedings.

However, we commented on the number of hours expended in the remedy phase, specifically noting the high percentage of hours spent by counsel in conference with clients on the remedy phase in contrast to the other phases in the litigation:

> According to the affidavits, the total number of attorney hours in the remedy phase was 773.28, resulting in a fee request of $178,635.00. Of this time, 297.98 hours were spent in conferences with clients and congressmen. The approximately 300 hours spent conferring with clients in this phase compares with 143.67 hours spent in the various aspects of the pre-remedy phase....

*Id.*

In considering the Legislature's challenge to the award of fees for hours which may have been spent solely in partisan negotiations and proceedings, we quoted Justice Frankfurter's remark that " 'there comes a point where [we] should not be ignorant as judges of what we know as [women and] men.' " *Id.* at 801 (quoting *Watts v. Indiana,* 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949)). We stated that "we cannot be oblivious to the fact that there are extraordinary political machinations and implications in the process of drawing congressional district boundaries," that the Republican congressional plaintiffs "to put the matter precisely, certainly were not interested in this statutory revision simply because of their innate attachment to mathematical exactitude," and that "it is certain that they would have tolerated any less exact redistricting plan that would have furthered their partisan prospects for re-election." *Id.*

In the sentence that is most significant for purposes of this appeal, we stated, "We simply cannot discern, in the district court's opinion, how many attorney hours in the remedy phase were spent *obtaining mathematical exactitude* and how many hours were devoted *solely to obtaining the most favorable political result for the [plaintiffs].*" *Id.* (emphasis added). We stated that "[w]hile nothing in the record suggests that the [plaintiffs] have acted in bad faith in making this fee request ... the record is inadequate to justify the district court's order compensating 773.28 hours of work (i.e., an award of $178,635) in the remedy phase." *Id.*

Twice again we commented on the uncompensability of time spent for political purposes, stating we would remand "[b]ecause of the magnitude of the amount sought and the possibility of confusing a lawyer's role in getting a mathematically equitable distribution with a client's preference for maximizing his or her political advantages" and stating again that the Legislature is not obligated to compensate counsel's efforts merely to maximize anyone's political leverage. *Id.* We remanded for a "closer inquiry into the nature of the services rendered and the time spent," stressing that it is the Plaintiffs' "burden to demonstrate the reasonable necessity of the hours charged." *Id.*

## III.

### A.

The parties view our prior opinion as conditioning the award of attorneys' fees on proof that counsel's time was spent exclusively for one purpose or another.[2]

2. We reject at the outset the Legislature's argument that we should deny recovery for work

Plaintiffs rest on the affidavit of their principal counsel, Bernard Hellring and Jonathan Goldstein, averring that "[n]one of these meetings or discussions with our clients were devoted '*solely* to obtaining the most favorable political result for' them," App. at 155 (emphasis added), and by the two three-paragraph affidavits, one filed by Congresswoman Marge S. Roukema and the other by Congressmen Matthew J. Rinaldo and Christopher H. Smith, which aver that "[n]one of our conferences with our attorneys ... 'were devoted solely to obtaining the most favorable political result for us,'" App. at 148, 151. Plaintiffs argue that they met their burden to exclude any time devoted "*solely*" to political considerations, which was "none" under their calculation.

The Legislature relies on the affidavits of Peter Palmer, an independent consultant who asserts that he provided redistricting planning services to both sides, and of other persons on the Democrats' side with whom Plaintiffs' counsel conferred with respect to the remedy phase. These affidavits state that such contact related strictly or primarily to partisan, political considerations[3] such as ensuring reelection to Congress of the incumbents.[4] The Legislature argues that under our remand the only time that can be compensated is the time devoted to formulating a mathematically exact plan. It argues that because Plaintiffs have not identified any time that was so devoted, and because in any event it is undisputed that such a plan could be drawn within a day or two[5], Plaintiffs have not met their burden of justifying compensation for the remedy phase.

B.

Each of the parties has taken an extreme position which is not consistent with a reasonable reading of our earlier opinion. We reject the Legislature's position that the only compensable time was that needed to achieve mathematical exactitude. The Legislature's argument that an acceptable plan could have been produced in a few hours cannot be reconciled with its failure to produce one. Even if one were to excise all consideration of politics, reapportionment planning may appropriately take into account factors other than mathe-

done by partners at the remedy stage that could have been handled by less expensive technical experts. This argument was implicitly rejected in our first decision when we reversed the district court's 20% reduction in lodestar for top-heavy staffing. If we had believed that the remedy phase of the case presented different concerns as to staffing, we would have stated so when remanding. *See Todd and Co. v. Securities and Exch. Comm'n,* 637 F.2d 154, 157 (3d Cir.1980) (second appellate panel may refuse to consider arguments which involve issues that were "discussed by the court in the prior appeal ... [or] decided by necessary implication.").

3. Lawrence T. Marinari, Chief Counsel for the New Jersey General Assembly, stated that "except ... where there were procedural issues to be addressed, all contact [with Plaintiffs' counsel] ... dealt with the resolution of the case by the alignment of Congressional district lines for partisan political reasons." App. at 51. Joseph G. Minish, a Democratic Congressman from New Jersey, stated that in his three or four hour meeting with Plaintiffs' lawyers, "[t]hey inquired of me as to which municipalities I would accept gaining and losing, and I offered my opinion on the acceptability of certain suggested changes.... Other than discussing generally for a short time, the need to get population deviations as low as possible to meet the Supreme Court guidelines, there were no other discussions regarding constitutional considerations when I met with them." App. at 59–60. Lawrence B. Weitzner, Deputy Commissioner of the New Jersey Department of Community Affairs, averred that in his discussions with Plaintiffs' lawyers "a significant percentage of time ... was devoted to political considerations affecting the drawing of new legislative districts...." App. at 65.

4. Palmer averred that in his meetings with Plaintiffs' lawyers, they "indicated to me that in addition to their objective of reducing the population deviation as low as possible, they wanted to preserve Districts for incumbents, particularly Republican incumbents." App. at 41.

5. Thomas Lindenfeld, a former Democratic Staff Director of the New Jersey Legislative Apportionment Commission, filed an affidavit stating that "[i]f the only criterion to be followed in drafting a redistricting plan is that of equal population, it is a very simple matter to prepare a redistricting plan in a day or two at most." App. at 54. Palmer agreed, averring: "if political objectives were not a consideration, it would be very possible to develop a plan with as low a deviation as one ... in a matter of hours." App. at 38.

matics, such as geography and history. Both Palmer and Lindenfeld included among the considerations which made redistricting a time-consuming process not only the time spent on the political considerations of preserving incumbents' districts and balancing the overall partisan makeup of a plan but also, in addition to equal population, the need to make districts compact, preserve continuity with previous congressional district lines, and observe natural and artificial geographic boundaries such as rivers and political subdivisions. App. at 38, 55. A fair compensation for fees expended in the remedy phase thus may include considerably more time than the limited hours needed to achieve mathematical exactitude.

Plaintiffs' argument that they satisfied their burden by filing affidavits stating that the discussions were not "solely" about political considerations fares no better. Indeed, their affidavits suffer from the same defect as did negative pregnant pleading at common law. Our prior opinion expressed as an acknowledged fact of life that some (and a probably not inconsiderable) portion of the time listed for the remedy phase must have been spent on political considerations for which the Legislature could not be required to pay attorneys' fees. We cannot ignore what we so forcefully expressed on the prior appeal.

Not only have the affidavits filed by the Legislature provided factual support for our hypothesis, but on oral argument Mr. Hellring candidly expressed, for the first time on behalf of Plaintiffs, agreement with the premise that underlay our remand. He stated that "the plain truth" is that "[t]here are always political considerations. They are totally interwoven." Tr. of Oral Argument at 22. He continued, "The fact that we say in our affidavit that there was no time devoted solely to political considerations doesn't mean that during the period of time a great deal of discussion didn't take place with respect to political considerations." *Id.* at 22–23. Mr. Hellring explained that time was spent by Plaintiffs' counsel in "listen[ing] to the political considerations being thrust upon us by all of the people with whom we met. They spoke politics." *Id.* at 24.

This court may have unintentionally contributed to the difficulty faced by the district court on remand when we instructed it to distinguish between "attorney hours ... spent obtaining mathematical exactitude and ... hours ... devoted solely to obtaining the most favorable political result," 811 F.2d at 801. This instruction was read by the parties and the district court as requiring the parties to isolate the time spent on either "mathematical exactitude" or "*solely* ... obtaining the most favorable political result" (emphasis added). Compliance with the spirit of our remand required the Plaintiffs' attorneys, if they could not realistically isolate their time spent on political considerations from that spent in devising a redistricting plan that would pass constitutional muster, to divide their time proportionately between the two categories. This is required even when more than one item is discussed in the same conversation. Although we failed to say so explicitly, in no other way could there have been adherence to our mandate because we repeatedly stressed that the Legislature, *i.e.*, the New Jersey taxpayers, could not be required to pay fees for anything other than the time reasonably spent to devise a constitutional plan.

We are extremely reluctant to prolong this case particularly since, like *Jarndyce v. Jarndyce*,[6] it now seems to live for the fees alone. Nonetheless, we cannot give in to the strong temptation to fix the fees ourselves, because the award of attorneys' fees is committed to the informed discretion of the district court. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166 (3d Cir.1973). Therefore a remand is once again necessary.

In resubmitting their affidavits, Plaintiffs should not persist in the broad view they have taken here as to what is compensable time. Time spent educating their clients about constitutional considerations,

6. *See* C. Dickens, *Bleak House* (Bantam ed. 1983) (1st ed. London 1853).

no matter how informative for the clients and important to the attorneys' relationship with the clients, is simply not compensable time. Plaintiffs misread our opinion when they argue that if such time is interwoven with devising a constitutional plan they are entitled to be paid for it. *See* Tr. of Oral Argument at 32. While the long conferences with their clients may have helped Plaintiffs' counsel draw a redistricting plan that was acceptable to their clients, and while the attorneys may be entitled to compensation from their clients for such services, the civil rights attorneys' fees provision embodied in 42 U.S.C. § 1988 authorizes payment of fees only for the time needed to devise a constitutional plan acceptable to the court. Therefore on remand the district court must exercise great caution before authorizing compensation for any of the almost 300 hours listed for conferences with clients and others, and must take care that Plaintiffs are not paid for the portion of attorney time spent on political considerations, even if interwoven with services that are compensable.

C.

The Legislature argues that the district court should have held a hearing or permitted discovery as to the nature of the services rendered during the remedy stage of this litigation. Because there were directly contradictory facts averred in the affidavits filed by the opposing parties with respect to the amount of time devoted to political considerations during the conferences with counsel for the Plaintiffs, the matter should not have been decided without a hearing.

We also reject the Plaintiffs' argument that the Legislature abandoned its request for further discovery. The magistrate deferred ruling on the Legislature's request for discovery because there would be no need for such discovery if the district court agreed with Plaintiffs' interpretation of the remand, as it did. Thus, if the Legislature renews its request for discovery on remand, the matter must be decided on the merits by the district court. We do not suggest, however, that discovery is necessarily appropriate in this case and we are confident that the district court will control the proceedings to prevent the expenditure of any unnecessary additional time.

Finally, we cannot accept the Plaintiffs' suggestion that the time listed by them must be accepted *ipso facto* unless the Legislature can file contrary affidavits. This imposes an unrealistic burden on the Legislature which is not in a position to have information on how Plaintiffs' attorneys spent their time. Instead, the district court, as in ruling on all fee requests, must evaluate the time listed in conjunction with the product created thereby.

IV.

If past is prologue it may be chimerical for us to suggest that the course to be followed by the parties most consistent with the public interest would be to attempt to resolve the remaining issue of the appropriate attorneys' fees for the remedy phase by agreement, mediation, or arbitration. Nonetheless, we will remand this case for further proceedings consistent with this opinion while expressing the hope that there can be a speedy resolution, certainly one before the next census requires yet another reapportionment. Each party to bear its own costs.