The CRESCENT PUBLISHING GROUP, INC., Plaintiff–Appellant,

v.

PLAYBOY ENTERPRISES, INC., doing business as Playboy Magazine, Defendant–Appellee.

Docket No. 00–7810.

United States Court of Appeals, Second Circuit.

Argued Dec. 6, 2000.

Decided March 27, 2001.

Lawrence E. Abelman, Abelman, Frayne & Schwab (Michael Aschen, on the brief), New York, NY, for Plaintiff–Appellant.

Kenneth P. Norwick, Norwick & Schad (Judith L. Bachman, on the brief), New York, NY, for Defendant–Appellee.

Before NEWMAN, CABRANES, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff–Appellant The Crescent Publishing Group, Inc. ("Crescent") appeals from a judgment of the United States District Court for the Southern District of New York (Nicholas J. Tsoucalas, *Judge,* of the United States Court of International Trade, sitting by designation), ordering it to pay, pursuant to section 101 of the Copyright Act of 1976, 17 U.S.C. § 505 ("section 505"), the attorneys' fees of De-

fendant–Appellee Playboy Enterprises, Inc. ("PEI").

Crescent brought suit under the Copyright Act, alleging that PEI infringed one of its photographs. After Crescent conceded that it did not have the requisite proof of copyright ownership, the District Court dismissed the case with prejudice and *sua sponte* awarded attorneys' fees to PEI. Following the District Court's final decision determining the amount of fees to be awarded, Crescent appealed, challenging both the decision to award fees and the determination of the amount of fees.

For the reasons given below, we hold that the District Court exceeded its allowable discretion in *sua sponte* awarding attorneys' fees without affording both parties an opportunity to present evidence on the propriety and the amount, if any, of the fee award because there were indications of material disputes of fact in the record. Accordingly, we vacate the award. We also conclude that, if the District Court again chooses to award fees, any evidence of the actual billing arrangement between PEI and its counsel should be considered a significant, though not necessarily controlling, factor in the determination of what fee is "reasonable" under the Copyright Act. We remand to the District Court to conduct proceedings consistent with this opinion.

## BACKGROUND

Crescent is the publisher of several adult magazines. On June 2, 1995, Crescent obtained from a photographic stock house a candid photograph of a celebrity that it published in its December 1995 issue, which went on sale on September 19, 1995. Crescent claimed that the stock house, Retna Ltd., was the authorized agent for the North American rights to that photograph. Although Crescent argues on appeal that when it had purchased the rights to the photograph, it reasonably believed it acquired an "exclusive" right to publish the image in a specific geographic region, the language on the licensing agreement seems to indicate otherwise. The invoice, which provides the terms of the licensing agreement, explicitly provides that "ALL RE–USE OR SYNDICATION MUST BE NEGOTIATED." It further states:

> Unless otherwise specifically stated, photographs ... remain the property of [Retna] or the particular photographers. Upon submission of an invoice by [Retna], a license only is granted to use the photographs for the use specified on the invoice and for no other purpose, unless such photographs are purchased outright.... Recipient does not acquire any right, title or interest in or to any photograph ... and will not make, authorize or permit any use of the particular photograph(s) or plate(s) made therefrom other than as specified herein.

PEI published the same photograph in its January 1996 issue, which went on sale in December 1995. Crescent registered a copyright for this photograph on November 6, 1998—over three years after it contracted with Retna—and then filed the instant complaint against PEI on November 16, 1998. In its complaint, Crescent asserted that it had "complied with the provisions of the Copyright Act with respect to the ... photograph and was the owner of the exclusive U.S. copyright therein at all relevant times." Compl. ¶ 13.[1] Crescent repeated this assertion in

---

1. This complaint was not the only source of litigation between the parties. Crescent and PEI have a long and contentious litigation history with one another. An additional suit filed by PEI against an affiliate of Crescent was pending during the course of this action.

the February 18, 2000 joint pre-trial order. Joint Pre–Trial Order ¶ 3.

At a joint pre-trial conference on February 28, 2000, Crescent's attorney indicated that despite his good faith efforts to obtain a written chain of title for the rights to the photograph and Retna's written assurances that such evidence was forthcoming, Crescent did not have proof of copyright ownership. The District Court informed Crescent that if it did not obtain proof, the case would be dismissed with prejudice. PEI's counsel indicated that PEI would renew its claim for attorneys' fees and sanctions. On March 1, 2000, Crescent informed the District Court by letter that

> Crescent had attempted to obtain the written documentation that Playboy acknowledges is necessary under Section 204 of the Copyright Act. Crescent learned that the stock house did not itself have ownership, and they had purchased the rights from a photographer's representative in Europe. Apparently, it is not their practice to obtain an assignment from the photographer. Attempts to locate the photographer, whose last address was in Paris, have not been successful. Therefore, Crescent is not able to secure a complete written documentation of its chain of title.

Crescent accordingly asked for the case to be dismissed. On March 2, 2000, the District Court dismissed the case with prejudice and, although PEI had not yet made a formal motion for costs and attorneys' fees and although no hearing date was ever set, awarded costs and attorneys' fees to PEI pursuant to 17 U.S.C. § 505.[2] The District Court did not articulate reasons in this order explaining why an award of attorneys' fees was warranted. On March 23, 2000 the District Court denied Crescent's subsequent motion for reconsideration, rejecting Crescent's argument that the District Court's March 2nd order lacked the proper factual foundation because the District Court had yet to receive any evidence pertaining to Crescent's reasonableness in pursuing its claim. Crescent asserted that, were the record to be developed, it could provide evidence of its good faith belief of rightful ownership. The District Court noted that when it decided to award attorneys' fees, it had before it the Joint Pre–Trial Order, Crescent's March 1, 2000 letter admitting it did not possess the necessary proof, and the parties' statements during the joint pre-trial conference.

After the March 2nd order awarding fees, PEI's counsel submitted an affirmation in support of PEI's application for costs and attorneys' fees. PEI included a copy of the licensing agreement between Crescent and Retna and affidavits from two individuals involved in the transaction, Crescent's former photography editor and a Retna employee, both of whom averred that they understood that Retna had granted Crescent a one-time license to publish the photograph.

*Playboy Enters., Inc. v. Man's World Publ'ns,* No. 98 Civ. 3485(JES), *cited in Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,* No. 98 Civ. 8157 NT, 2000 WL 669638, at *4 & n. 4 (S.D.N.Y. May 23, 2000). Also in 1998, another affiliate of Crescent, Playgirl Inc., filed suit against PEI, *Playgirl, Inc. v. Playboy Enters., Inc.,* 98 Civ. 7740(SAS), alleging that PEI infringed its copyright by reproducing a cover of a 1995 issue of Playgirl magazine. *See Crescent Publ'g,* 2000 WL 669638, at *4.

That suit was discontinued after a District Judge at conference advised Playgirl that it was subject to sanctions for bringing an action in bad faith and with unclean hands. *Id.*

**2.** Section 505 permits a district court, "in its discretion," to award full costs, including an award of a reasonable attorney's fee, to the prevailing party in an action brought under the Copyright Act. 17 U.S.C. § 505.

In its opposition papers filed on April 5, 2000, Crescent described the steps it assertedly took in good faith to verify its ownership; submitted a delivery memorandum relating to the photograph at issue with a handwritten note indicating "1st American right publication;" noted that PEI failed to submit contemporaneous time records; and alleged that PEI combined its fees from this action with the Man's World action, *see supra* note 1, and had overestimated the amount attributable to this action. Crescent argued also that to permit PEI to submit its billing records after Crescent had submitted its opposition papers would effectively deprive Crescent of its only meaningful opportunity to contest those records. PEI did not submit copies of its billing records and time sheets until after Crescent had filed its opposition papers, and when it did so, PEI's records and time sheets were largely illegible, and did not purport to be complete.

■ Despite lacking the benefit of Crescent's alleged evidence asserting its good faith and Crescent's substantive opposition to the billing records PEI belatedly filed, the District Court awarded PEI costs and attorneys' fees amounting to $109,064.23 on May 23, 2000. Citing to the plain language on the licensing agreement, which limited Crescent to the right to a one-time reproduction of the photograph, and to evidence suggesting that Crescent filed this lawsuit to retaliate against prior lawsuits against it or its affiliates by PEI, the District Court concluded that an award of attorneys' fees was entirely proper to deter such frivolous filings in the future and to compensate PEI for being forced to defend against an action that Crescent brought improperly. 2000 WL 669638, at

*5. The District Court then used the lodestar method [3] to calculate the appropriate fee award. Neither party has objected to the application of the lodestar method. The District Court seemingly accepted at face value PEI's counsel's representation as to the hours and expenses expended and his rate, only reducing the total award (awarding 45% of the total amount requested) to account for the duplicative billing in this and the Man's World litigation. 2000 WL 669638, at *6. This timely appeal followed.

On appeal, Crescent principally argues that the District Court erred in determining to award fees without permitting Crescent the opportunity to submit evidence of its reasonableness in filing this suit and that the District Court erred in determining the amount of the award based on PEI's belated submissions of its billing records.

## DISCUSSION

■ Our review of an award of attorneys' fees is "highly deferential to the district court"; we will reverse on appeal only for an abuse of discretion. *Alderman v. Pan Am World Airways,* 169 F.3d 99, 102 (2d Cir.1999) (internal quotation marks omitted). While "abuse of discretion" is "one of the most deferential standards of review[,] ... [a] district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law, or on a clearly erroneous assessment of the evidence." *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 120–21 (2d Cir.2001) (citations and internal quotation marks omitted).

---

**3.** In calculating a "reasonable" fee award under the lodestar method, a court typically begins by determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

## I. Failure to Provide a Hearing or Other Opportunity to Submit Evidence

 Section 505 of the Copyright Act provides that

[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. In *Fogerty v. Fantasy,* 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court refused to apply a direct analogy to its fee-shifting decisions under the Civil Rights Act and instead held that, under section 505, the standard governing the award of attorneys' fees is identical for prevailing plaintiffs and prevailing defendants. The Court, while stressing that the decision to award fees rests in the court's equitable discretion, also approved in *dicta* several nonexclusive factors courts could consider when awarding fees, namely, "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n. 19, 114 S.Ct. 1023 (internal quotation marks omitted). Such factors may be used "so long as ... [they] are faithful to the purposes of the Copyright Act." *Id.* " 'The primary objective of copyright is ... "[t]o promote the Progress of Science and useful Arts." To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.' " *Id.* at 527, 114 S.Ct. 1023 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349–50, 111 S.Ct. 1282, 113 L.Ed.2d 358

(1991) (quoting U.S. CONST. art. I, § 8, cl. 8)).

 Although the District Court rightly attempted to apply these factors, it did so without first giving Crescent an opportunity to present (1) its objections to PEI's billing records, and (2) relevant evidence, including evidence as to its motivations for filing suit. We find that the District Court exceeded its allowable discretion in proceeding in this manner when there were indications in the record of disputes of material fact. While not required in every case, an evidentiary hearing, or at the very least an opportunity to submit evidence, is necessary to determine the propriety of a fee award and the amount of such award if it is evident that the material facts necessary for those determinations are genuinely in dispute and cannot be resolved from the record. *See Smith v. Philadelphia Housing Auth.,* 107 F.3d 223, 225 (3d Cir.1997) (noting that if hourly rates are disputed, the district court must hold a hearing); *Love v. Deal,* 5 F.3d 1406, 1409 (11th Cir.1993) (holding that district court abused its discretion by not providing an evidentiary hearing, although one was not requested, when there was a dispute of material fact that could not be resolved from the record); *Daggett v. Kimmelman,* 864 F.2d 1122, 1128 (3d Cir.1989) (hearing required when directly contradictory facts averred); *Sablan v. Department of Fin. of N. Mariana Is.,* 856 F.2d 1317, 1322 (9th Cir.1988) ("Fee awards therefore need not be preceded by an evidentiary hearing if the record and supporting affidavits are sufficiently detailed to provide an adequate basis for calculating an award, *and* if the material facts necessary to calculate the award are not genuinely in dispute") (internal citations omitted); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d

Cir.2000); *cf. Walz v. Town of Smith-town*, 46 F.3d 162, 170 (2d Cir.1995) (district court did not exceed its discretion in failing to provide a hearing; noting that "we are informed of nothing that would be developed in such a hearing that would alter the outcome"); *In re Thirteen Appeals Arising Out of San Juan Dupont Hotel Fire Litig.*, 56 F.3d 295, 303 (1st Cir.1995) ("When the written record affords an adequate basis for a reasoned determination of the fee dispute, the court in its discretion may forgo an evidentiary hearing.").

In this case, there were several potential disputes of material fact raised by Crescent in its submissions to and conduct before the District Court. As to the propriety of awarding fees, while Crescent asserted during the pre-trial conference that it had brought the instant complaint with a good faith belief that it had acquired copyright ownership, it was not provided the opportunity to explain in detail the basis for that belief prior to the District Court's awarding fees. In its motion for reconsideration, Crescent again alluded to the dearth of evidence in the record before the District Court when the fee order was issued and suggested that, were the record developed, Crescent could provide evidence that its claim was non-frivolous. In its memorandum in opposition to PEI's affirmation in support of costs, Crescent asserted that Retna had indicated it was the exclusive agent for the photograph, that there is a "general understanding" in the publishing industry that stock houses often sell copyrightable interests, and that there was a handwritten note on the delivery memorandum that suggested to Crescent it had obtained such

an interest. At this stage of the proceeding, however, only the amount of the award was at issue. Because Crescent presented indications that there are disputes of material fact, it is entitled to place on the record any evidence it has before the District Court chooses to award fees. Once Crescent submits its evidence on remand, the District Court may find that such evidence does not outweigh the plain language of the license. However, the District Court may not make that determination without at least affording Crescent the opportunity to submit evidence.

As to the amount of the fee award, Crescent was unable to challenge PEI's assertions because PEI did not submit copies of its billing records until long after Crescent's opposition papers had been filed. The records submitted were vague and often barely legible, yet the District Court apparently accepted the number of hours represented therein at face value. Further, Crescent challenged the hours PEI allocated to this action because PEI's counsel had consolidated its billing with that of another copyright action pending between the parties. Crescent also offered proof that the hours properly attributed to this litigation were far less than the number claimed by PEI or awarded by the District Court—a dispute the District Court recognized in its opinion. Finally, the District Court noted that "[t]hroughout this litigation, the parties have made repeated bitter references in their submissions to the Court to the merits and status of other actions, many of them completely irrelevant...." 2000 WL 669638, at *4.[4] This observation raises the question of whether all the hours the District Court credited PEI were truly "reasonable."

---

4. Having examined the record, we agree with the District Court's assessment. Although this is an adversarial system, the conduct of the parties' counsel need not revert to child-

ishness. Counsel for both parties should cease occupying the courts' time with such irrelevancies.

*See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("The district court ... should exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation) (quoting S.Rep. No. 94–1011, p. 6 (1976), U.S. Code Cong. & Admin. News at 5908, 5913).

■ Crescent also contested the reasonableness of the rate PEI's counsel asserted and argued that the District Court could not award fees without evidence of the actual billing arrangement between PEI and its counsel.[5] As we explain below, while the actual billing arrangement does not necessarily establish a ceiling on the rate attributed to private counsel under the Copyright Act, we believe it is a significant factor in determining what rate is "reasonable." Therefore, the District Court should permit the parties on remand to submit evidence on this factor as well.

It is understandable that the District Judge felt compelled to manage his docket efficiently, especially in light of the many conclusory allegations that were submitted by Crescent and Crescent's delay between filing the complaint and seeking the documentary evidence to support its claim of copyright ownership. We are also mindful of the Supreme Court's warning that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. However, while individually many of these instances of potentially unresolved issues are insufficient to find that the District Court exceeded its allowable discretion, when those instances are viewed together, it is clear that Crescent should have been

afforded the opportunity to develop the evidentiary record before any determinations as to the propriety and amount of any fee award were made. If the written record developed on remand affords an adequate basis for a reasoned determination as to these issues, the District Court, may, in its discretion, choose to forgo an evidentiary hearing. *See In re Thirteen Appeals,* 56 F.3d at 303.

Although we are remanding to the District Court for further proceedings, we are not intimating any view on the merits of the decision to award fees. It may well be that the District Court, upon receiving Crescent's evidence, will again choose to award costs and attorneys' fees to PEI. All we are holding is that Crescent is entitled to submit evidence on this issue and on the amount to be awarded if the District Court so chooses, because the filings Crescent submitted below indicate the existence of genuine disputes. Parties would be well advised, however, to indicate clearly to the district courts what evidence, if any, they feel reveals genuine disputes of material fact.

## II. Relevance of the Actual Billing Arrangement to the Amount of Fees Awarded

■ Crescent argues that the District Court could not award fees without evidence as to PEI's actual billing arrangement with its counsel. Without such evidence, there exists the possibility of providing an economic windfall to the prevailing party (presumably because the actual billing arrangement would require a lower payment than that which a court

---

5. Counsel for PEI responded to this assertion in his Reply Affirmation by stating "I will also confirm here that my firm's rates as set forth in these papers are the rates that PEI has agreed to pay for our services in these cases." Reply Affirmation ¶ 51. This statement, offered after Crescent had the chance to object, provides only the rate PEI was charged but does not explain if PEI contracted for other limitations on the amount of fees spent during the course of this litigation.

would find is the reasonable rate for attorneys of similar skill in the relevant community), contrary to the goals of section 505. Because we have not previously addressed this issue under the Copyright Act, we believe it would be useful to provide guidance for the District Court on remand if it chooses to award fees. *See, e.g., Albert v. Loksen,* 239 F.3d 256, 266 (2d Cir.2001) (providing guidance for district court on remand); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1139, 1154 (2d Cir.1983) (providing guidance for calculation of attorneys' fee award).

■ Because section 505 establishes the court's ability to shift fees in copyright actions, it is useful to begin with the text of the statute. *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) ("It is elementary that '[t]he starting point in every case involving construction of a statute is the language itself.'") (citation omitted). Section 505 permits a court in its discretion to "allow the recovery of *full costs by or against any party.* ... Except as otherwise provided :.., the court may also award a *reasonable attorney's fee to the prevailing party as part of the costs.*" 17 U.S.C. § 505 (emphasis added). This section clearly provides for a fee award to be made to a prevailing party, not directly to its counsel. *Cf. Healey v. Chelsea Res., Ltd.,* 947 F.2d 611, 624 (2d Cir.1991) ("When a fee-shifting statute that authorizes the courts to award attorneys' fees to prevailing parties does not mention an award against the losing party's attorney, the appropriate inference is that an award against attorneys is not authorized."); *Neft v. Vidmark, Inc.,* 923 F.2d 746, 747 (9th Cir.1991) (finding no indication in the language or legislative history that Congress intended section 505 to be a means of imposing sanctions on attorneys). The emphasis on compensating a party for its "full costs" and including a "reasonable attorney's fee" as part of that cost lends arguable credence to Crescent's argument that the actual billing arrangement should provide a cap on the amount it could be required to pay.

The text of the statute, however, does not address what should qualify as "reasonable" in the first instance.[6] Although the Supreme Court has not specifically held that courts should apply the lodestar method in calculating fees under section 505, it has indicated that the lodestar method (emphasizing a comparison to rates of lawyers of similar skill and experience in the community) is appropriate in calculating the "reasonable" fee permitted under other fee shifting statutes. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563–68, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (Clean Air Act, 42 U.S.C. § 7604(d)). Because copyright actions may not always result in high damage awards, for instance if the commercial value of the work is minimal, and may not always involve parties with substantial financial resources, an objective measure such as the lodestar seems the most effective method in enabling parties to retain competent counsel.

Choosing the lodestar method does not end our inquiry. The lodestar method suggests that the prevailing market rate in

---

6. The legislative history to the 1976 Act is sparse, *see Fogerty,* 510 U.S. at 523–24, 114 S.Ct. 1023, and does not address this issue. The legislative history of the 1909 Act, from which the attorneys' fee provision of section 505 was carried forward verbatim, is similarly unilluminating.

the community should trump any agreement for a lower rate made between a client and its private counsel.[7] *Cf. Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (civil rights); *Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 114 (2d Cir.1988) (Lanham Act). But the emphasis on ascertaining a "reasonable" fee also suggests the absence of a penalty beyond the punitive or deterrent policies taken into consideration in the decision to award fees in the first instance. *See* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.10[C], at 14–145 to 14–146 & n. 15 (2000) ("[T]he amount of such fee (as distinguished from the reason for its award ...) should be based upon the reasonable value of the services rendered without adding any additional amount by way of penalty."). The actual billing arrangement certainly provides a strong indication of what private parties believe is the "reasonable" fee to be awarded.

We are not prepared to declare a per se rule that the actual billing arrangement places a ceiling on the amount the prevailing party can recover through a fee award under section 505, especially in light of the district courts' broad discretion in awarding fees. *See, e.g., Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 120–21 (2d Cir.2001). In some instances the actual billing arrangement may not be "reasonable." Because we wish to give effect to the statutory language of the Copyright Act while applying the lodestar method, we conclude that, for prevailing parties with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is "reasonable."[8] In weighing this factor, we remind the District Court that in no event should the fees awarded amount to a windfall for the prevailing party.

## CONCLUSION

For the foregoing reasons, we vacate the judgment ordering Crescent to pay PEI its reasonable attorneys' fees and remand for proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

---

7. We limit our discussion to agreements between clients and their attorneys who engage in customary private practice. Different considerations often arise with parties who appear *pro se, see, e.g., Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579 (D.D.C. 1981), or with parties who engage for-profit public interest law firms, *see, e.g., Student Pub. Interest Research Group v. AT & T Bell Labs.,* 842 F.2d 1436 (3d Cir.1988). We also do not address situations in which a party and its counsel attempt to defraud the court through a manipulation of their billing arrangement. *See, e.g., Jewish Employment &*

*Vocational Serv., Inc. v. Pleasantville Educ. Supply Corp.,* 601 F.Supp. 224 (E.D.Pa.1983).

8. We realize that this decision is contrary to the holding of the Eighth Circuit, which declared that "the actual fee arrangement between the client and the attorney is immaterial." *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294 (8th Cir.1996). Because we believe that the text of the Copyright Act indicate that the actual fee arrangement is not only relevant but significant in certain contexts, we respectfully disagree with our sister Circuit.