**Thomas and Marie AIELLO, et al., Plaintiffs,**

**v.**

**TOWN OF BROOKHAVEN, Defendant.**

**No. 94CV2622(FB).**

United States District Court, E.D. New York.

July 5, 2001.

Robert N. Zausmer, Meyer, Suozzi, English & Klein, P.C., Mineola, NY, Bernard L. Burton, Burton & Associates, P.C., Melville, NY, for Plaintiffs.

Annette Eaderesto, Town Attorney, Brookhaven Department of Law, Medford, NY, Charles D. Cunningham, Snitow & Cunningham, LLP, New York City, for Defendant.

### MEMORANDUM & ORDER

BLOCK, District Judge.

On March 15, 2001, after it found defendant Town of Brookhaven ("Town") liable under the Resource Conservation and Recovery Act for contaminating waters juxtaposed to plaintiffs' properties, *see Aiello v. Town of Brookhaven,* 136 F.Supp.2d 81 (E.D.N.Y.2001), the Court assessed against the Town the full costs of the expert ap-

pointed by the Court pursuant to Federal Rule of Evidence 706. *See* Order of Ct., Mar. 15, 2001. The order provided that "[s]hould the Town object to the amount of the [expert's] invoice, it must so inform the Court within ten days." *Id.* at 2. Subsequently, the Court timely received a letter from the Town objecting to the bill in the sum of $35,251.03 submitted by the expert, Dr. Raymond A. Ferrara ("Dr.Ferrara"), and "to the apportionment of Dr. Ferrara's fees entirely to the Town without any inquiry into the plaintiffs' capacity to bear part of that cost." Ltr. to Ct. of Charles D. Cunningham, Esq., Apr. 3, 2001 ("Cunningham Ltr."), at 2–3. In that latter regard, the Town called the Court's attention to comments made by the Court during the course of the trial that plaintiffs would have to submit financial disclosures to satisfy the Court that it could not afford to contribute to the expert's costs. The. Town also contends that since the action is not at its end (only liability has been established by the Court and it has certified the issue for appellate review), the expert's costs should not be assessed until the entry of final judgment. The Town requests, in the alternative, that the Court now "schedule a hearing to address the reasonable compensation to be paid to Dr. Ferrara for his services and the parties' respective contributions to the payment of those costs." *Id.* at 5.

The Court's order only invited the Town to object to the amount of the expert's fee. It will therefore treat that part of the Town's submission railing against payment by the Town of the entire fee as a motion for reconsideration, pursuant to Local Civil Rule 6.3, of that branch of the Court's order. The Court grants the motion, but upon reconsideration adheres to its decision.

## I

■ There is not a plethora of judicial precedent addressing the process or the factors relevant to the assessment of the costs of experts appointed by a district court under Rule 706. Subdivision (b) of the rule simply provides that the expert's compensation "shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." Fed.R.Evid. 706(b); *see National Union Fire Ins. Co. v. Risk Exch. Inc.,* No. 86 Civ. 7461(MJL), 1990 WL 210258, at *1, *3 (S.D.N.Y. Dec.13, 1990) ("[r]esearch reveals a dearth of authority on the application of this fee provision and the factors by which the amount of compensation should be measured"). What little precedent that does exist has been culled as follows:

> Judicial discretion over the time of payment means that the court has power to make the parties pay the expert's fees as the expert renders services, rather than making the expert wait until the case is concluded. Discretion over the allocation of fees means that, before final judgment, the court may split responsibility for fees as the court sees fit. Thus, while the court commonly will order the parties to contribute equal shares, the court may apportion fees differently and may even impose the fee burden entirely on one side. Once the case is concluded, the rule provides that expert's fees are taxable as costs to the losing party. However, the courts have read subdivision (b) as giving the trial judge discretion to allocate fees between the parties even after final judgment, regardless of who has prevailed. Accordingly, where one of the parties is indigent and the need for a court-appointed expert is clear, the courts may assess all expert fees against the party with the ability to pay regardless of who prevails.

29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6305 (1997) (footnotes omitted).

■ Initially, although the Town argues that Dr. Ferrara should not be paid until costs are taxed after final judgment, logic, fairness and common sense suggest that the time is ripe for the Court's expert to be compensated. A court-appointed expert is entitled to be paid regardless of which party ultimately prevails. *See Leesona Corp. v. Varta Batteries, Inc.*, 522 F.Supp. 1304, 1312 n. 21 (S.D.N.Y.1981) ("the appointing court may in the interest of justice apportion the cost of the expert in the manner it finds appropriate under the circumstances, regardless of the ultimate victor in the lawsuit"). Dr. Ferrara was appointed only in regard to the issue of liability; his services have been completed; he has patiently waited for a prolonged period of time for payment, and final judgment may be years away in light of the prospect of appeal and protracted litigation on remedial issues. *See United States Marshals Serv. v. Means*, 741 F.2d 1053, 1058 (8th Cir.1984) ("[t]he plain language of Rule 706(b) . . . permits a district court to order one party or both to advance fees and expenses for experts that it appoints"). In fairness to Dr. Ferrara, and to mitigate the risk that other experts may be hesitant to accept court appointments if they do not have a comfort level that they will fairly and expeditiously be compensated regardless of which party ultimately prevails, he should now be paid.

## II

■ There are two issues, however, that the Town has raised that warrant more elaborate judicial attention. First, the Town argues that "[u]nless one party claims indigence, the tendency has been that courts equally divide the costs of an expert between the parties." Cunningham Ltr. at 3 (citing cases). Next, the Town suggests that if the Court is to relieve a party in whole or in part from paying its equal share, that party has to submit documentation to the court as to its financial wherewithal, and the Town is entitled to a hearing on the issue.

Although "[a] number of circuits have recognized that Rule 706(b) grants a district court the discretion to apportion all the costs of an expert to one side," *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997) (citing cases), the Court's research has not uncovered a case of a disproportionate allocation of an expert's costs in the absence of indigency. Nonetheless, it would encroach upon the discretion vested in the district court under Rule 706(b) to assess costs "in such proportion and at such times as the court directs," to make indigency the *sine qua non* for the exercise of such discretion. The sounder approach is to recognize that whether the court should assess the expert's costs equally, unequally or entirely against one party should depend, as postulated in the preeminent treatise on federal evidence, "on such factors as the nature of the case, the reason the need for a court-appointed expert arose, and the status of the parties." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 706.06[4] (2d ed.2001). These factors should be considered non-exclusive since in a given case other circumstances may appropriately inform the Court.

## III

■ **Nature of Case:** Congress has provided for citizen suits, such as the present case, when the government fails to act to protect the environment. It has therefore empowered ordinary citizens, regardless of means, to act as private attorneys general. In doing so, Congress has recognized that overseeing the protection of the environment is too important to be left solely in the hands of the government. As the Court noted in its underlying decision, if the plaintiffs did not act "Motts Pond

and Motts Creek would forever remain visual blights." *Aiello*, 136 F.Supp.2d at 117. Regardless of the ultimate outcome of the case, plaintiffs' litigation can hardly be considered ill-conceived. Given the nature of this case and Congress's reliance on the citizen as the ultimate guardian of the environment, it would be counterintuitive to place financial obstacles in the path of this type of citizen litigation.

**Status of the Parties:** Here, the found violator is the government itself. It has at its disposal all necessary financial means to litigate against the plaintiffs. It consequently retained the services of a highly credentialed engineering firm to which it had paid approximately $250,000 for past services. *See* Transcript of Trial Testimony, March 25, 1998, at 799. As the Court noted in its decision, plaintiffs, on the other hand, are "working-class" people living in "modest homes." *Aiello*, 136 F.Supp.2d at 87. Consistent with their more limited financial resources, they hired an expert with less imposing credentials, did not drill new wells and were pragmatically dependent upon the Town's data. In fact, the Town, seeking to capitalize on its superior resources, devoted much of its cross-examination of plaintiffs' expert to highlighting the educational and professional disparities between the parties' experts. Notably, the cases relied upon by the Town in urging equal allocation of a court-appointed expert's fees are commercial cases and the parties were on comparable financial footing. *See* Cunningham Ltr. at 3 (citing *Computer Assocs. Int'l Inc. v. Altai, Inc.*, 775 F.Supp. 544 (E.D.N.Y.1991), *aff'd in part, vacated in part*, 982 F.2d 693 (2d Cir.1992); *Unique Concepts, Inc. v. Brown*, 659 F.Supp. 1008 (S.D.N.Y.1987); *Leesona Corp.*, 522 F.Supp. 1304; *Board of Educ., Yonkers City Sch. Dist. v. CNA Ins. Co.*, 113 F.R.D. 654 (S.D.N.Y.1987)).

Need for Expert: The Court's decision documents the Town's suspect behavior in discharging its governmental responsibility to search out the cause of the abject contamination of Motts Pond and Motts Creek, causing the Court to conclude that "[t]his litigation is an exemplar of Congress's wisdom in providing for citizen environmental endangerment lawsuits when the government fails to act ." *Aiello*, 136 F.Supp.2d at 117. It was largely in response to the Town's apparent efforts to avoid, rather than to effectively confront, getting to the root of the environmental problem that the Court deemed it necessary to appoint an impartial expert "to evaluate the existing data in order to assist the Court in assessing its technical aspects and in determining whether there was a scientific explanation for the contamination in Motts Pond and Motts Creek." *Id.* at 94. Under these circumstances, and given the imbalance between the parties and the general notion that the government in dealing with its citizens should "turn square corners," *Means*, 741 F.2d at 1059 (citations omitted), the Court, as finder of fact, "deemed [the appointment of an expert] to be absolutely essential to the progress of a fair trial and to the interests of justice." *Id.*

Other Circumstances: As taxpayers of the Town, plaintiffs have, ironically, helped finance the Town's costs of litigation, including payment of its expert's fees. They will likewise be contributing to the payment of Dr. Ferrara's fees even in the absence of an allocation.

**IV**

It is true, as the Town points out, that during the trial the Court mentioned that it would require plaintiffs to provide financial data so that the Court could assess whether they could contribute to defraying the expert's costs. Upon further

reflection, the Court now decides otherwise. Initially, as observed by the Court during its site inspection, plaintiffs were living in modest homes befitting their working-class status. It would undoubtedly be a hardship to impose these additional costs upon them. Moreover, no constructive purpose would be served by requiring the sixty-two plaintiffs each to submit financial data to assess who amongst them can reasonably contribute to Dr. Ferrara's bill, or by holding a hearing on the issue. Notably, the lead plaintiff, Thomas Aiello, has passed away. Under the circumstances of this case, balancing all the relevant factors, the Court is not inclined to expend the judicial capital required to discern each plaintiff's financial wherewithal and to run the risk of pitting neighbor against neighbor. District courts have been cautioned against engaging in unneeded second litigation to resolve attorneys' fee disputes. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("[a] request for attorney's fees should not result in a second major litigation"); *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 301–02 (1st Cir.1995) ("[a] district court is not obliged to convene an evidentiary hearing as a means of resolving every attorneys' fee dispute"). The same husbanding of judicial resources should equally apply, where indicated, in determining the allocation amongst the parties of court-appointed experts.

## V

■ Apart from the issue of allocation, the Town is entitled to question the amount of Dr. Ferrara's bill, and the Court's order afforded it that opportunity. *See Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,* 246 F.3d 142, 147 (2d Cir. 2001) ("an evidentiary hearing, or at the very least an opportunity to submit evidence, is necessary to determine the propriety of a fee award and the amount of such award if it is evident that the material facts necessary for those determinations are genuinely in dispute and cannot be resolved from the record"). The Town contends that Dr. Ferrara's hourly billing rate "substantially exceeds the rates charged for comparable services in the environmental industry." Cunningham Ltr. at 2.

The Town shall have twenty days from entry of the order herein to submit appropriate documentation to support this contention. Its submission shall include the hourly billing rates, tasks performed, number of hours required to perform such tasks, overall fees charged and the professional qualifications for each environmental expert from Dvirka & Bartilucci, including Thomas Maher, who contributed to the Phase II report or assisted the Town in this litigation. If the Court receives such a submission, it will then determine whether a hearing is necessary to address the reasonableness of Dr. Ferrara's fees.

## CONCLUSION

Within twenty days of entry of this memorandum and order, the Town is directed either to pay Dr. Ferrara as instructed in the Court's March 15 Order or to submit documentation supporting its challenge to Dr. Ferrara's fees.

**SO ORDERED.**