OPINION OF THE COURT
 

 Wesley, J.
 

 Defendant Keith Keen was convicted following a jury trial of murder in the second degree and related charges stemming from a shooting in a nightclub in New York City.
 

 Prior to voir dire, the trial court asked defense counsel if defendant was waiving his right to be present at sidebar:
 

 “The Court: Mr. Levinson, before we bring them in, will you[r] client waive his right to be present when I call the members of the prospective panel to the bench?
 

 “Mr. Levinson: Yes.
 

 “The Court: Defendant waived his Antommarchi right to be present at the bench during the time we question the members of the panel.”
 

 Thereafter, neither defense counsel nor defendant objected when members of the panel were brought before the bench during the three days of voir dire.
 

 Shortly before opening statements, defense counsel requested that the Trial Judge issue a material witness order for Charlotte Jordan, defendant’s ex-girlfriend and the mother of his child. Defense counsel considered Jordan a “crucial” witness and was concerned that she would not appear to testify. According to defense counsel, Jordan was with defendant at the time of the shooting.
 

 When Jordan arrived at court, the Trial Judge conducted an ex parte conference at defense counsel’s request at which neither defendant nor the prosecution was present. During the conference, Jordan expressed her reluctance to testify. The Trial Judge explained to Jordan that she had been subpoenaed by defense counsel and emphasized the significance of the responsibility. The court noted that defense counsel had indicated that she had important testimony. Jordan then briefly explained her recollection of the events in question. When defense counsel told Jordan that she was to return to testify at a later date, she assured both him and the court that she would “definitely be back.” The People requested a copy of
 
 *537
 
 the transcript of the conference. The court denied the request, but indicated that if Jordan testified, the transcript would be turned over.
 

 During opening statements, defense counsel told the jury that defendant was with Jordan at the time of the shooting and that defendant and Jordan were having an argument. Counsel noted that Jordan and defendant were standing outside the dance hall area of the nightclub, near the hallway where the shooting took place. Notwithstanding Jordan’s expressed reluctance to testify, counsel told the jury, “Charlotte will be here and she will testify that at that point while they were arguing they heard pop, a pop that sounded very much like a gun shot.”
 

 After the prosecution presented its case, defense counsel requested another ex parte conference with the Judge, Jordan and her stepfather. Once again, both defendant and the People were absent from the conference. Defense counsel noted that at the last ex parte conference, Jordan seemed nervous about testifying; counsel suspected that “the reason that she was so hesitant and upset was because she felt if she got on the witness stand and said what she said to my investigators and myself that she would be committing perjury.” Jordan confirmed defense counsel’s statements and counsel thereafter requested that the court release Jordan from the subpoena and seal the records of the ex parte application until the trial was over. The court granted both requests.
 

 Defendant then took the stand and testified that he was living with Jordan and their infant son at the time of the shooting and that at the time they had a “very good relationship.” Defendant stated that on the night of the shooting, he was in the hall of the nightclub arguing with Jordan when he saw some patrons trying to push their way into the nightclub and heard a shot. He testified that he grabbed Jordan and pushed her into the dance hall area of the nightclub.
 

 Following the completion of testimony, the People requested a “missing witness” charge based on defendant’s failure to call Jordan to testify, arguing that “she was in the courtroom twice,” and that she was “someone who would be called by the defense,” adding that she was the mother of defendant’s child. Defense counsel objected on the grounds that Jordan was not within the “exclusive control” of defendant and that the People knew where she was. When the trial court indicated that it would grant the People’s request, defense counsel again argued
 
 *538
 
 that the People could have called Jordan to testify. The court granted the requested charge and instructed the jury as follows:
 

 “You may not, under the law, speculate or guess as to what or how Charlotte Jordan would have testified if called. However, from the failure of the defendant to call Charlotte Jordan the law permits but does not require you to infer, if you believe it proper to do so, that if Charlotte Jordan had been called as a witness by the defendant and had testified her testimony would not have supported the testimony of defendant. On this issue you may only infer so if you are satisfied that Charlotte Jordan was under the control of the defendant and was available to be called by the defendant if he had wished to do so.”
 

 Defendant’s conviction was affirmed by the Appellate Division, with one Justice dissenting. The dissent at the Appellate Division concluded that the missing witness charge was error because Jordan was a hostile witness for defendant and therefore was not under his control. The dissent relied primarily upon Jordan’s statements at the first conference (252 AD2d 278, 284). It did not take into account the opening statement made by defendant’s attorney immediately after that conference. The dissenting Justice granted defendant leave to appeal to this Court.
 

 On appeal, defendant asserts that his purported
 
 Antommarchi (People v Antommarchi,
 
 80 NY2d 247) waiver is invalid because there is no record proof that he had authorized his lawyer to waive that right. Defendant further argues that he was denied his fundamental right to be present at the two ex parte conferences his counsel conducted with his former girlfriend. He finally contends that the trial court erred in giving a missing witness charge allowing the jury to draw an unfavorable inference from his failure to call his former girlfriend as a witness.
 

 We disagree with these contentions. To begin with, nothing in this record calls into question the effectiveness of defendant’s
 
 Antommarchi
 
 waiver. The record does not support defendant’s contention that he was absent at the time counsel waived his
 
 Antommarchi
 
 rights (see,
 
 People v Camacho,
 
 90 NY2d 558, 561). The waiver occurred in open court after the Trial Judge had articulated the substance of the
 
 Antommarchi
 
 
 *539
 
 right. Moreover, neither defendant nor his counsel objected to his absence at sidebar colloquies during the three-day voir dire
 
 (see, People v Spruill,
 
 212 AD2d 381, 382,
 
 Iv denied
 
 85 NY2d 943). We thus conclude that the waiver was effective.
 

 We further reject defendant’s argument that he was denied the right to be present at the two ex parte conferences. The conferences were held solely at the behest of the defense; the People were excluded and not even furnished with a transcript. Moreover, the conferences involved procedural matters. The trial court initially informed Jordan of her obligations under the subpoena and defense counsel later explained his decision to release Jordan from the subpoena. Under these circumstances, the defendant may not claim that he was improperly denied the right to be present
 
 (see, People v Williams,
 
 85 NY2d 945, 947;
 
 People v Velasco,
 
 77 NY2d 469, 472;
 
 cf., People v Sloan,
 
 79 NY2d 386, 391).
 

 Finally, the trial court did not err in granting the People’s request for a missing witness charge. A missing witness charge is appropriate if it is shown that the party against whom the charge is given had the ability to locate and produce the witness and “there was such a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor”
 
 (People v Gonzalez,
 
 68 NY2d 424, 429). The burden, in the first instance, is on the party seeking the charge — here, the prosecution — to establish that “there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that such witness can be expected to testify favorably to the opposing party and that such party has failed to call him to testify”
 
 (id.,
 
 at 427). In order to defeat the request for a missing witness charge, the opposing party must demonstrate that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that the testimony from the missing witness would be merely cumulative to other evidence, that the witness is not available or that the witness is not under the party’s control such that the witness would be
 
 expected
 
 to testify in the party’s favor
 
 (see, id.,
 
 at 428).
 

 Immediately after meeting with Jordan in the first ex parte conference, defense counsel told the jury in his opening statement that “defendant was with his girlfriend Charlotte Jordan” on the night of the shooting and that Jordan would be in court to testify that she and defendant were arguing when they heard, “a pop that sounded very much like a gun shot.” The defendant’s testimony closely paralleled that position. Under
 
 *540
 
 these circumstances, the People sufficiently established, through defendant’s own representations, that Jordan was knowledgeable about a material issue in the case, that she was available and could have been called by defendant, and that it could be reasonably inferred that Jordan was under defendant’s control such that it would be expected that she would testify in his favor. Indeed, having been excluded from the ex parte conferences, the People had no basis to conclude otherwise.
 

 At the charge conference, defense counsel merely argued that Jordan was available and could have been called by the People. We have recognized that the “availability” of a witness is a separate and distinct consideration from that of “control”
 
 (People v Gonzalez, supra,
 
 68 NY2d 424, 428). Where a witness is under the control of one party, that witness is “in a pragmatic sense unavailable to the opposing party”
 
 (id.,
 
 at 431). Defendant failed to identify any evidence to demonstrate that Jordan was not under his control as a result of the termination of their relationship or other factors. Indeed, although defense counsel characterized Jordan’s demeanor at the first ex parte conference as “hesitant,” he nonetheless told the jury she would testify and never offered “hesitancy” or hostility as rebuttal to the People’s entirely understandable expectation that Jordan had continually been under defendant’s control. Thus, we conclude that on this record the trial court did not err as a matter of law in instructing the jury that an unfavorable inference could be drawn from defendant’s failure to call Jordan so long as the jury was satisfied that she was under his control. Defendant’s remaining contentions are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order affirmed.