[780 NYS2d 335]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NORRIS WILLIAMS, Appellant.

First Department, July 29, 2004

### APPEARANCES OF COUNSEL

*Center for Appellate Litigation*, New York City (*Robert S. Dean* and *James M. Branden* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Madeleine Guilmain* and *Patricia Curran* of counsel), for respondent.

### OPINION OF THE COURT

FRIEDMAN, J.

Defendant was convicted of selling two glassine containers of heroin to an undercover police detective. At trial, the People presented two witnesses, the detective who purchased the heroin (UC 22152) and the arresting officer. Of these two witnesses, only UC 22152 testified to having witnessed the transaction. UC 22152's identification testimony was not corroborated by any other evidence. Although the officers' testimony established that the undercover team included a "ghost" assigned to observe the transaction, the People did not call any "ghost" to testify. Further, the People did not offer any prerecorded "buy" money or additional drugs alleged to have been recovered from defendant. Although the witnesses described defendant as having worn a distinctive blue hat with white flowers, the hat, as the People acknowledge, did not appear in defendant's arrest photograph, nor was the hat offered in evidence.

In his summation, defense counsel, who had not presented any evidence, characterized the prosecution case as "skeletal," emphasizing the lack of corroboration of UC 22152's identification of defendant. In this regard, counsel stressed the People's failure to call a "ghost" to testify as an eyewitness to the drug sale with which defendant was charged.

The court's charge to the jury included the following language:

> "[Y]ou must decide this case solely on the basis of the evidence or lack of evidence actually presented to you in this courtroom, which you actually saw and heard in this courtroom. *Do not speculate on the*

*whereabouts of people whose names are mentioned as having been at the alleged scene of the crime who were not called as witnesses. No one is required to come to court and testify. Don't speculate on their non-appearance, or what they might have said if they would have come.* Judge the evidence that you saw and heard here which you actually saw and heard in this courtroom. Does that evidence convince you beyond a reasonable doubt or not; is it sufficient or is it insufficient.'' (Emphasis added.)

At the close of the charge, defense counsel objected to the highlighted language in the above-quoted passage, asserting that it was substantially the same as a proposed handwritten charge that the court had withdrawn upon counsel's objection during precharge proceedings. Counsel noted, in substance, that the charge, as given, undercut his summation, in which he referred to the fact that the jury had not heard testimony from a ''ghost.'' Counsel asserted that the aggregate effect of the court's charge was to tell the jurors that they were ''to consider the lack of evidence, but they're not to consider the lack of evidence.'' The court responded: ''I didn't say they're not to consider; I said not to speculate. . . .'' The court declined to give the jury further instructions to clarify this point, and noted that defendant had an exception. The case was then submitted to the jury, which returned a guilty verdict.

On appeal, defendant argues that, in charging the jury, the trial court committed reversible error in using the highlighted language in the above-quoted passage, which, he claims, deprived his trial counsel's comments concerning the People's failure to call the ''ghost'' of any force or effect. In this regard, defendant correctly points out that, even if the criteria for a missing witness charge (*see People v Keen,* 94 NY2d 533, 539 [2000]) were not entirely satisfied, his trial counsel was entitled to comment in summation on the People's failure to call a ''ghost'' witness, since such comments, to which the prosecutor raised no objection, had an adequate foundation in the record (*see e.g. People v Tankleff,* 84 NY2d 992, 994-995 [1994], *rearg denied* 93 NY2d 1034 [1999]; *People v Williams,* 301 AD2d 369, 370 [2003], *lv denied* 99 NY2d 659 [2003]; *People v Negroni,* 280 AD2d 497 [2001], *lv denied* 96 NY2d 832 [2001]; *People v Ruine,* 258 AD2d 278 [1999], *lv denied* 93 NY2d 929 [1999]; *People v Wood,* 245 AD2d 200, 201 [1997], *lv denied* 91 NY2d 946 [1998]; *People v Barroso,* 228 AD2d 196 [1996]; *People v Smith,* 190

AD2d 522 [1993], *lv denied* 81 NY2d 977 [1993]). We agree with defendant that a new trial is required on this ground.

We acknowledge that the portion of the court's charge directing the jury not to speculate about the substance of the hypothetical testimony of a person mentioned as an uncalled witness was not incorrect in itself (*cf.* 1 CJI[NY] 8.54, 8.55 [1983] [the pattern missing witness charges in effect at the time of defendant's trial included admonitions "not . . . [to] speculate or guess" as to the substance of the uncalled witness's testimony]). Nonetheless, the direction not to speculate on the substance of an uncalled witness's testimony, unaccompanied by any comment clarifying that the jury could still give such weight as it chose to the People's failure to call that witness (*see Ruine*, 258 AD2d at 278), may well have misled the jurors to believe that they were not permitted to draw any inference from the People's failure to call the witness. This is not the law (*see Tankleff*, 84 NY2d at 994 [approving summation comments on witnesses not called by defense that "were not made in bad faith and were merely efforts to persuade the jury to draw inferences that supported the People's position"]). Since a missing witness charge was not being given, the court should simply have remained silent concerning the consideration the jury could properly give to the People's failure to call the "ghost," unless an inquiry by the jury (none was received) forced it to address the matter (*see Ruine*, 258 AD2d at 278). Although the court at several points in the charge stated that the jury could consider any "lack of evidence" in deciding the case, such remarks were not sufficient to cure the harm done to the defense by the error discussed above. We would further note that the court's comment that "[n]o one is required to come to court and testify" is inaccurate. In addition, the court's statement that the jury should decide the case based on "the evidence or *lack of evidence actually presented to you in this courtroom*" (emphasis added) was a needlessly confusing modification of the standard CJI charge.

Although defendant failed to preserve a claim of constitutional error, his counsel's objection to an unanticipated portion of the charge, which protest was registered immediately after the charge was completed and prior to submission of the case to the jury, plainly did preserve a claim of nonconstitutional trial error (*see* CPL 470.05 [2]). Thus, contrary to the dissent's suggestion, we review this claim on the law, not in the exercise of our "interest of justice" jurisdiction. Applying the standard of harmless

error analysis appropriate to claims of nonconstitutional error (*see People v Kello*, 96 NY2d 740, 744 [2001]), we cannot conclude that the error in question was harmless. The proof of defendant's guilt, consisting of an uncorroborated eyewitness identification, was, contrary to the dissent's assertion, less than overwhelming, although plainly sufficient to support a conviction. Moreover, given that the central theme of the defense at trial was that the one-witness identification was entirely uncorroborated and therefore unreliable, the effect of the court's charge was essentially to instruct the jury not to consider the defense. Accordingly, it cannot be said that there was no significant probability of acquittal had the court not given the erroneous charge.

In closing, we wish to make clear that our decision does not mean that, in a prosecution based on an undercover drug purchase, the defense is entitled to a missing witness charge unless the People call a "ghost" to corroborate the testimony of the officer who made the purchase. Contrary to the dissent's claim, nowhere do we "assert[ ] that the court was . . . required" to give such an instruction. A party is not entitled to a missing witness charge if the testimony of the uncalled witness would be merely cumulative (*see Keen*, 94 NY2d at 539; *People v Freeman*, 305 AD2d 331, 331-332 [2003], *lv denied* 100 NY2d 594 [2003]), even if the opposing party has called only one witness to testify on a given material issue. Nor does our decision mean that the defendant will invariably be entitled, in any such prosecution, to comment in summation on a failure to have a ghost testify. Here, however, the issue is neither a missing witness charge (which defendant apparently did not request), nor the propriety of defense counsel's comments (to which the People did not object), but defendant's right to mount a defense based on the lack of corroboration of the key identification evidence against him. Contrary to the view of our dissenting colleagues, defendant's counsel did offer such a defense in this case, and, since even the People did not object to defendant's raising that defense, defendant was entitled to a charge that did not interfere with his right to have that defense receive the jury's due consideration.

Since the foregoing is sufficient to require that the conviction be reversed and the matter remanded for a new trial, we need not reach defendant's remaining arguments.

Accordingly, the judgment of the Supreme Court, New York County (John E.H. Stackhouse, J.), rendered March 20, 2000,

convicting defendant, after a jury trial, of criminal sale of a controlled substance in or near school grounds and criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to concurrent terms of $4^{1}/_{2}$ to 9 years, should be reversed, on the law, and the matter remanded for a new trial.

Tom, J. (dissenting). I respectfully dissent and would affirm the judgment of conviction.

The arresting officer, Detective Michael Hernandez, and an undercover officer identified by shield number UC 22152 were assigned to an upper Manhattan location to conduct a drug buy. The credentials of UC 22152 as an experienced undercover officer who had participated in over 100 drug operations were established in testimony. UC 22152, along with two other undercover officers, also identified by their shield numbers, drove their unmarked car to the location, as the arresting officer separately drove with two other officers and parked nearby. Although it is less than clear in the testimony, in that the three undercovers were conducting several operations and switched on and off in their individual roles, it appears from the testifying undercover's testimony that one or both of the others acted as ghosts on this buy. In any event, the matter was not clarified on cross-examination.

UC 22152 walked up to a group of people and asked who was "working." Defendant, standing nearby on the corner down the block from a school, made eye contact with him. UC 22152 testified that defendant was a Black male wearing a beige shirt, denims, and a blue hat with white flowers—a description that fit no one else nearby. Defendant asked the undercover what he was looking for, and when the undercover responded "viagra," the name of a brand of heroin, defendant stated that he only had "2000," another heroin brand. The undercover indicated that was acceptable and then asked for "two," and defendant accepted $20 in buy money. Defendant then walked over to another man, described as "J.D. Shorty," handed the buy money to "Shorty," who gave defendant two glassines which were later determined to contain heroin, which defendant then gave to the undercover. The undercover then returned to his car and, within two minutes of the purchase, transmitted the relevant details and the description of the seller. Within seconds, Detective Hernandez drove up and arrested defendant, who was walking away from the buy location and who was the only person whose appearance matched the transmitted description. UC 22152 drove

by within minutes and made a confirmatory identification, and also identified defendant later at trial. Neither drugs nor buy money were recovered from defendant but the evidence established that he had given the money to "Shorty" and not held the stash and thus the absence of such evidence does not detract from the overwhelming evidence of defendant's sale to the undercover officer (*People v Rodriguez*, 211 AD2d 518 [1995], *lv denied* 85 NY2d 865 [1995]; *People v Diaz*, 197 AD2d 379 [1993], *lv denied* 82 NY2d 893 [1993]). The site of the sale to PS 192 was approximately 265 feet. The other undercover officers, who might have acted as ghosts, did not testify; as noted, apparently, other undercover buys were made subsequent to the one for which defendant was arrested in which they appeared to participate.

Defendant at trial pursued a defense of mistaken identification. Defendant elicited the arresting officer's testimony that he had not seen the sale and that this was a busy intersection. However, a review of the record reveals that the evidence of identification was overwhelming. Testimony established that a ghost officer might, or might not, be assigned to witness the sale, but his or her primary function would be to protect the purchasing officer and, if feasible, impede flight. During summations, defense counsel said, "Let's say something about the ghost who did not show up here," but directed his comments to the difficulty of a ghost seeing anything clearly in that particular location in further support of the defense of mistaken identification.

On appeal, defendant claims that the focus of the defense was on the People's failure to call the ghost officer to testify, but that is not borne out in the actual summation or in cross-examination. Defendant's failure to request a missing witness charge belies his position on appeal. Rather, in summing up, counsel appeared to suggest that the purchasing undercover officer was not even kept under observation, stating: "What were they doing if they didn't see anything? And that's what you have here, a situation where the ghost would truly ghost. There was—They were so ghost-like, they didn't exist at all."

The court instructed the jury that it should

"decide this case solely on the basis of the evidence or lack of evidence actually presented to you in this courtroom . . . Do not speculate on the whereabouts of people whose names are mentioned as having

been at the alleged scene of the crime who were not called as witnesses. No one is required to come to court and testify. Don't speculate on their non-appearance, or what they might have said if they would have come. Judge the evidence that you saw and heard here which you actually saw and heard in this courtroom. Does that evidence convince you beyond a reasonable doubt or not; is it sufficient or is it insufficient."

The court went on to instruct the jury that reasonable doubt may be based on "reason, common sense, not some vague speculative or imaginary doubt, but a doubt that will cause a reasonable person to hesitate to act in a matter of this importance," that it must be based on "the evidence or lack of evidence," and that "doubt of guilt is not reasonable if, instead of being based on the quality of the evidence or the insufficiency or lack of evidence, it is based on speculation about things not in evidence, guesswork, surmise, conjecture or whim."

Thus, the court adequately charged the jurors that they could consider the lack of evidence in reaching their verdict. When counsel later stated that these parts of the charge were inconsistent, the court responded that it properly directed the jury not to "speculate" about matters not in evidence, which was different from its direction that they may "consider" the lack of evidence and, hence, there was no inconsistency. There appears to have been an off-the-record discussion regarding the court's handwritten addition to the charge. Counsel appeared to have said that the court read part of the handwritten addition which it had excluded, but counsel has failed to preserve a clear record as to that discussion or what, specifically, the court's handwritten addition stated. In any event, no further objection ensued and no due process claim was then made, leaving it unpreserved for review (*People v Kello*, 96 NY2d 740 [2001]; *People v Mendez*, 302 AD2d 300 [2003], *lv denied* 100 NY2d 540 [2003]).

On this record, review in the interest of justice is unwarranted. The court properly focused on the prohibition against juror speculation, and the charge otherwise conveyed appropriate principles of law. Given the overwhelming evidence of guilt, any error was harmless as a matter of law (*People v Marchese*, 224 AD2d 341 [1996], *lv denied* 88 NY2d 989 [1996]).

Defendant now claims that the court's instructions were contradictory and that they undercut a defense based on the People's failure to call the ghost officer to testify. However, it is

the purported defense that is contradicted by the record. Not only has the defense theory undergone a remarkable transformation since the trial, the position taken on appeal asserts that the court erred in failing to permit defendant to present a missing witness defense when no such charge was ever requested.

The majority's position is similarly inconsistent. Conceding that the court correctly instructed the jurors not to speculate about testimony that might have been given by witnesses the prosecution did not call, it is asserted that the court was nevertheless required to affirmatively instruct the jurors that they might draw an adverse inference from the People's failure to call such other witnesses. The latitude granted to comment, *in good faith*, on the failure to produce a witness in the absence of criteria warranting a missing witness charge does not impose any obligation on the court to affirmatively instruct the jurors that an adverse inference may be drawn (*People v Tankleff*, 84 NY2d 992, 994 [1994]). Moreover, unlike the situation in *Tankleff*, it has not been demonstrated that the People's uncalled witness "had material, noncumulative information about the case" (*id.* at 995). The defense argued, on summation, that no ghost officer was in a position to clearly observe the transaction (*see People v Vasquez*, 272 AD2d 226 [2000], *lv denied* 95 NY2d 872 [2000]; *People v Ortiz*, 193 AD2d 449, 451 [1993], *affd* 83 NY2d 989 [1994]; *cf. People v Kitching*, 78 NY2d 532, 536 [1991]). Counsel therefore had no good faith basis to comment on the People's failure to call the ghost officer to give testimony. Thus, to the extent that the court's instruction might be said to have precluded the jurors from drawing an adverse inference, it was entirely appropriate (*Tankleff*, 84 NY2d at 994). Finally, rather than "the mainstay of the defense," as defendant now maintains, counsel's brief allusion to the People's failure to produce the witness was merely tangential.

An adverse inference instruction is appropriately obtained by requesting a missing witness charge, supported by the necessary showing upon the record (*People v Keen*, 94 NY2d 533, 539 [2000]). The practical effect of the majority's position is to require a trial court to deliver a missing witness instruction even though none is requested and even where, as here, the defense maintains that no other person was in a position to witness the drug transaction for which the defendant was convicted.

Defendant's attempt to manufacture an identification issue out of the failure to offer corroborative testimony is unavailing. Defendant, attired in distinctive clothing, was observed by an

experienced police officer from close proximity in broad daylight. No one of similar description was present at the location. Defendant was promptly apprehended in the immediate vicinity of the drug sale and positively identified as the seller by the purchasing undercover officer, both at the scene and at trial. The People offered a Polaroid photograph of defendant wearing his telltale flowered cap. Not surprisingly, defendant does not challenge the sufficiency or weight of the evidence against him. It is submitted that any purported error in the court's charge is harmless in light of the overwhelming evidence of guilt.

Nothing in the record indicates that, if called, the ghost officer or officers had any relevant testimony to offer. This was the position of trial counsel to bolster defendant's claim of mistaken identification. Trial counsel's own cross-examination did not establish that a ghost was in a position to observe the sale so as to testify regarding identification, and his own summation, in fact, disparaged the ability of any other witness to maintain a clear sight line.

NARDELLI, J.P., and SULLIVAN, J., concur with FRIEDMAN, J.; TOM and ELLERIN, JJ., dissent in a separate opinion by TOM, J.

Judgment, Supreme Court, New York County, rendered March 20, 2000, reversed, on the law, and the matter remanded for a new trial.